USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-30-18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOHN R. DURSO ET AL.,

                Plaintiffs,

   - against -

STORE 173 FOOD CORP. ET AL.,

                Defendants.

---

16-cv-9456 (JGK)

MEMORANDUM OPINION
AND ORDER

JOHN G. KOELTL, District Judge:

The plaintiffs, fiduciaries of the Local 338 Retirement Fund, brought this lawsuit to collect unpaid withdrawal liability allegedly owed by the defendants – Store 173 Food Corp., Owners' Kids Food Corp., J. W. G. F. Food Corp., and F G W J Food Corp. – pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1381 et seq.

The plaintiffs moved for summary judgment, arguing that the defendants failed to arbitrate the issue of withdrawal liability as required by ERISA, and are therefore automatically liable for the amount alleged. The defendants filed a cross motion for summary judgment, contending that arbitration was not required in this case and that they do not owe withdrawal liability under ERISA as a matter of law. The plaintiffs' motion for summary

judgment is **granted** and the defendants' motion for summary judgment is **denied**.

I.

The standard for granting summary judgment is well established. "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts which are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

2

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998). When there are cross motions for summary judgment, the Court must assess each of the motions and determine whether either party is entitled to judgment as a matter of law. Admiral Indem. Co. v. Travelers Cas. & Sur. Co. of Am., 881 F. Supp. 2d 570, 574 (S.D.N.Y. 2012); see also Elastic Wonder, Inc. v. Posey, 179 F. Supp. 3d 307, 310 (S.D.N.Y. 2016).

## II.

### A.

The plaintiffs are fiduciaries of the Local 338 Retirement Fund ("the Fund"), a multiemployer employee benefit plan under

3

ERISA, 29 U.S.C. § 1002(3), (27). Pls.' 56.1 Stmt. ¶ 1. The defendants either are or were businesses under common control[1] and parties to a series of collective bargaining agreements obligating them to contribute to the Fund. Id. ¶ 22; Falzone Cert. ¶ 6. Store 173 and J. W. G. F. went out of business around April 2015 and April 2016, respectively. Falzone Cert. ¶¶ 2-3. Owners' Kids and F G W J remain in business and continue to contribute to the Fund under the collective bargaining agreements. Id. ¶¶ 4, 9.

Upon going out of business, Store 173 ceased all covered operations under the Fund and ceased contributing to it. See Pls.' 56.1 Stmt. ¶ 5. In a March 18, 2016, letter to Store 173, the Fund administrator stated that Store 173 had effected a "complete withdrawal" from the Fund under ERISA and was therefore obligated to pay withdrawal liability to the Fund. Hamilton Aff. Ex. B at 1. The letter advised that Store 173's withdrawal liability totaled $72,702, to be paid in twelve quarterly installment payments beginning on April 1, 2016. Id. The letter also notified Store 173 of its right to arbitrate its withdrawal liability, and added that failure to arbitrate would

---

[1] The parties do not dispute that the defendant businesses are under common control. Four persons own at least 80 percent of the total shares of the businesses, and each person owns the same proportional share of each business. See 26 C.F.R. § 1.414(c)-2(c); Pls.' 56.1 Stmt. ¶ 22.

4

cause Store 173 to waive any dispute as to its withdrawal liability. Id. at 2.

Store 173 did not make the April 1, 2016, payment demanded in the March 18 letter. Pls.' 56.1 Stmt. ¶ 8. The Fund administrator sent another letter to Store 173 on May 20, 2016, notifying Store 173 of its failure to pay and informing Store 173 that it had sixty days to cure its default – "otherwise, the [Fund] [would] pursue all available remedies." Hamilton Aff. Ex. C at 1. Store 173 did not cure its failure to make the April 1 payment and did not seek to arbitrate its withdrawal liability. Pls.' 56.1 Stmt. ¶¶ 8, 11. The plaintiffs then filed this lawsuit alleging that the defendants must pay the $72,702 that Store 173 owes in withdrawal liability plus statutory damages.

**B.**

Under ERISA, an employer who withdraws from a multiemployer plan is, with some exceptions, assessed withdrawal liability and must continue paying its proportionate share of the plan's unfunded vested benefits. 29 U.S.C. §§ 1383, 1392. Businesses under common control, such as the defendants, "are treated as a single employer for purposes of collecting withdrawal liability, and each is liable for the withdrawal liability of another." Ret. Plan of UNITE HERE Nat. Ret. Fund v. Kombassan Holding A.S., 629 F.3d 282, 285 (2d Cir. 2010) (internal quotation marks omitted) (quoting Corbett v. MacDonald Moving Servs., Inc., 124

5

F.3d 82, 86 (2d Cir. 1997)); see 29 U.S.C. § 1301(b)(1). ERISA's withdrawal liability scheme, set out in §§ 1391-99, works as follows.

An employer completely withdraws from a multiemployer plan when it "(1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan." § 1383(a). When an employer completely withdraws from a plan, the plan sponsor is responsible for determining the amount of the employer's withdrawal liability, notifying the employer of that amount, and collecting the withdrawal liability amount. § 1382. "Any dispute" between the employer and plan sponsor concerning withdrawal liability – that is, any determination made under §§ 1381-99 – "shall be resolved through arbitration." § 1401(a)(1). "Either party may initiate the arbitration proceeding" within the time period specified by § 1401(a)(1).

"Congress intended that disputes over withdrawal liability would be resolved quickly, and established a procedural bar for employers who fail to arbitrate disputes over withdrawal liability in a timely manner. If a party wishes to seek judicial resolution of its dispute without first submitting to arbitration it should seek declaratory and/or injunctive relief . . . before the time period to initiate arbitration expires." ILGWU Nat. Ret. Fund v. Levy Bros. Frocks, 846 F.2d 879, 887 (2d

Cir. 1988) (internal citation omitted). If an employer fails to arbitrate a dispute over its withdrawal liability, it generally waives the right to contest the propriety and amount of withdrawal liability. See, e.g., UNITE Nat. Ret. Fund v. Veranda Mktg. Co., No. 04cv9869, 2009 WL 2025163, at *4 (S.D.N.Y. July 13, 2009) ("[The employer] did not request arbitration within the statutory time period; that failure precluded [the employer] from challenging Plaintiff's determination of its liability."). This waiver might "lead to a harsh result, but the harshness of the default is largely 'a self-inflicted wound.'" Levy Bros., 846 F.2d at 887 (quoting IUE AFL-CIO Pension Fund v. Barker & Williamson, Inc., 788 F.2d 118, 129 (3d Cir. 1986)).

However, ERISA's arbitration procedure does not bar federal jurisdiction; "the requirement of exhaustion of administrative remedies in this context is a prudential matter." T.I.M.E.-DC, Inc. v. Mgmt.-Labor Welfare & Pension Funds, of Local 1730 Int'l Longshoremen's Ass'n, 756 F.2d 939, 945 (2d Cir. 1985). Under Bowers v. Andrew Weir Shipping, Ltd., arbitration is not required when (1) there are no unresolved questions of fact or contract-interpretation issues, (2) review is judiciously economical, and (3) the issue falls outside the scope of 29 U.S.C. §§ 1381-99, the provisions that Congress directed to the arbitrator. 27 F.3d 800, 807-08 (2d Cir. 1994).

## C.

The parties have filed cross motions for summary judgment with respect to the defendants' withdrawal liability.

The defendants do not dispute that Store 173 was an employer under ERISA, was timely and adequately notified of its alleged withdrawal liability, and failed to seek arbitration. Rather, the defendants claim that Store 173 did not effect a complete withdrawal, and therefore no withdrawal liability can be assessed against it. The defendants point out that 29 U.S.C. § 1301(b)(1) provides that "all employees of trades or businesses . . . which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer." The defendants contend that because Store 173 was under common control with the other defendant businesses, the defendants all constitute a single employer under § 1301(b)(1). Therefore, the defendants argue that because two of the defendant businesses continued contributing to the Fund, Store 173 did not effect a complete withdrawal.

The defendants argue that arbitration is not required because this case meets the three Bowers prongs: (1) there are no factual disputes; (2) review is judiciously economical because the case presents a single legal issue – whether under § 1301(b)(1) Store 173 effected a complete withdrawal – that can

be decided on the papers submitted with the parties' motions; and (3) the legal issue concerns § 1301(b)(1), a provision outside those that Congress directed to the arbitrator.

The plaintiffs do not address the defendants' arguments as to the first two prongs of Bowers. The plaintiffs argue that the third prong is not satisfied because the defendants' position ultimately requires a determination of whether a complete withdrawal occurred under § 1383 – a determination within §§ 1381-99, the range of provisions requiring arbitration. In other words, the plaintiffs contend that this case concerns primarily § 1383, not § 1301(b)(1).[2]

As to damages, the plaintiffs claim that the defendants must pay the Fund $72,702 in withdrawal liability. The plaintiffs also claim that, pursuant to ERISA and the Trust Agreement governing the Fund, the defendants must pay interest on that amount, liquidated damages, and attorney's fees and costs. See § 1132(g)(2); Pls.' 56.1 Stmt. ¶¶ 13-19. The defendants do not specifically dispute the plaintiffs'

---

[2] The defendants claim that the plaintiffs' arguments do not respond to the defendants' argument that Store 173 did not completely withdraw. Thus, the defendants argue that the plaintiffs waived their right to contest whether a complete withdrawal occurred. This alleged waiver, according to the defendants, amounts to a concession that the plaintiffs improperly calculated the defendants' withdrawal liability. However, the plaintiffs did respond to the defendants' argument regarding complete withdrawal – the plaintiffs contend that the argument is irrelevant because it involves a determination that must be made by an arbitrator. Moreover, as explained below, whether Store 173 effected a complete withdrawal is in fact a question for the arbitrator.

9

entitlement to interest, liquidated damages, and attorney's fees and costs. The defendants only maintain that the plaintiffs cannot establish the defendants' withdrawal liability and thus the plaintiffs are not entitled to any damages under ERISA.

### III.

This case involves no factual disputes and the legal issue that it poses can be resolved expeditiously by the Court. Therefore, only the third Bowers prong is at issue: whether this case involves a determination of the type Congress directed to be arbitrated.

Whether an employer was ever an employer for purposes of ERISA's withdrawal liability provisions is a question for the Court. N.Y. State Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc., 426 F.3d 640, 646 (2d Cir. 2005). "[E]mployer status is a 'threshold legal issue' requiring 'judicial resolution,' since an entity that is not an employer cannot, under [ERISA], be required to arbitrate." Id. at 645 (quoting Bowers v. Transportacion Maritima Mexicana, S.A., 901 F.2d 258, 261 (2d Cir. 1990)). But whether an employer remains an employer under these provisions as of a withdrawal date is a question for the arbitrator. Id. at 646.

In this case, the defendants do not dispute that Store 173 was as an employer subject to ERISA's withdrawal liability provisions, including its arbitration provisions. This case

therefore does not involve the "threshold legal issue" of employer status. See id. Rather, the defendants contend that Store 173's withdrawal did not constitute a complete withdrawal under ERISA because Store 173 was under common control with other businesses still contributing to the Fund. Accordingly, the relevant issue is whether Store 173's obligations pursuant to the collective bargaining agreements and ERISA remain under these circumstances. This is a determination an arbitrator must make. See id.

Moreover, disputes involving determinations under 29 U.S.C. §§ 1381-99 must be arbitrated. This case involves a § 1383 determination.

The defendants cite Express Services, 426 F.3d at 647, for the proposition that whether a business is under common control with another is a 29 U.S.C. § 1301(b)(1) determination. But whether the defendants are under common control and thus constitute a single employer under § 1301(b)(1) is not at issue; at issue is how this single-employer status affects Store 173's withdrawal liability under § 1383. The defendants should have raised this issue in an arbitration. Indeed, employers "must arbitrate their defense that they ha[ve] not fully withdrawn, including their affirmative defense that they did not withdraw because another company assumed their obligations under [a collective bargaining agreement]." NYSA-ILA Pension Tr. Fund v.

11

Am. Stevedoring, Inc., No. 12cv2506, 2013 WL 1234957, at *3 (S.D.N.Y. Mar. 26, 2013).

Bolstering this conclusion is Congress's intent that disputes over withdrawal liability be resolved quickly through arbitration. See Levy Bros., 846 F.2d at 887. "It is indisputably correct that Congress mandated arbitration with a tight time schedule to mitigate the expense and delay inherent in litigation . . . ." Am. Stevedoring, 2013 WL 1234957 at *1. This case involves a withdrawal liability question of the sort Congress intended to be resolved expeditiously through arbitration.

In sum, this dispute over withdrawal liability required arbitration. Because the defendants were properly notified of and failed to seek arbitration, they cannot contest the propriety and amount of withdrawal liability assessed against Store 173. See Levy Bros., 846 F.2d at 887. The plaintiffs' motion for summary judgment is accordingly **granted** and the defendants' motion for summary judgment is **denied**. The plaintiffs are entitled to $72,702 of withdrawal liability from the defendants, who are jointly and severally liable as businesses under common control.

## IV.

The plaintiffs claim that in addition to the withdrawal liability amount, they are entitled under 29 U.S.C. § 1132(g)(2)

to interest on the withdrawal liability, liquidated damages, and attorney's fees and costs.

Section 1132(g)(2) states that when the fiduciaries of a plan prevail in an action to enforce delinquent contributions, the plan shall be awarded:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of—
>> (i) interest on the unpaid contributions, or
>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan . . . .

Moreover, the Trust Agreement governing the Fund provides for interest, liquidated damages, and attorney's fees and costs in the event of a default. Hamilton Aff. Ex. A, art. VII, § 5(a), (b), (d).

**A.**

The plaintiffs are entitled to interest on the $72,702 of withdrawal liability. They claim that the interest rate set out in the Trust Agreement is 18 percent per annum. See Pls.' 56.1 Stmt. ¶¶ 14, 16; Nicholls Decl. ¶ 6; see Hamilton Aff. Ex. A,

13

art. VII, § 5(a). The defendants do not dispute this interest rate. The plaintiffs are therefore entitled to $25,732.67 for the period between April 1, 2016,[3] and March 26, 2018,[4] plus $35.54 per day from March 26, 2018, until judgment is entered in this case. See Nicholls Decl. ¶ 7 & Ex. B (interest calculation). After judgment is entered, postjudgment interest shall accrue pursuant to 28 U.S.C. § 1961.

**B.**

Under 29 U.S.C. § 1132(g)(2)(C) and the Trust Agreement, the plaintiffs are also entitled to liquidated damages equal to the greater of the interest charged on the withdrawal liability assessment ($25,732.67 plus the interest that has accrued since March 26, 2018) or 20 percent of the withdrawal liability assessment ($14,450.40). The plaintiffs are therefore entitled to $25,732.67 plus $35.54 per day from March 26, 2018, until judgment is entered.

**C.**

Finally, the plaintiffs are entitled to reasonable attorney's fees and costs. The plaintiffs request $22,578.75: $21,471.25 in attorney's fees for 52.5 hours of work split between two associates and a partner,[5] and $1,107.50 in costs

---

[3] The date the defendants' first withdrawal-liability payment was due.

[4] The date the plaintiffs' summary judgment motion was filed.

[5] One associate is a 2013 law school graduate with five years of labor and employment law experience. This associate spent 38.25 hours on this

14

consisting primarily of filing fees and service costs. See Nicholls Decl. Exs. C & D.

The number of hours the attorneys spent on this matter, the partner's hourly rate, and the $1,107.50 request for costs are reasonable. However, the associates' hourly rate of $380, and $400 for work performed after January 1, 2018, is unreasonably high. See Durso v. Modern Food Ctr., Inc., No. 17cv7324, 2018 WL 3019112, at *5-6 (S.D.N.Y. June 18, 2018) (lowering a partner rate to $325 per hour and associate rates to $225 per hour in a case involving similar circumstances and similarly experienced lawyers); Doe v. Unum Life Ins. Co. of Am., No. 12cv9327, 2016 WL 335867, at *4-6 (S.D.N.Y. Jan. 28, 2016) (finding reasonable a $600 hourly rate for a partner's work and then lowering a $400 requested hourly rate to $355 for the work of an associate with six years of ERISA experience in a more complicated case after a bench trial with a more significant recovery), report and recommendation adopted, No. 12cv9327, 2016 WL 749886 (S.D.N.Y. Feb. 23, 2016); see also Sheet Metal Workers' Nat. Pension Fund v. Maximum Metal Mfrs. Inc., No. 13cv7741, 2015 WL 4935116, at *10 (S.D.N.Y. Aug. 18, 2015) ("[C]ourts in this District have

---

matter. The other associate is a 2005 law school graduate with three years of labor and employment law experience. This associate spent 5.75 hours on this case. Both associates billed $380 per hour before January 1, 2018, and $400 per hour after that date. The partner, a 1993 law school graduate with twenty-four years of labor and employment law experience, spent 8.5 hours on the case at an hourly rate of $490 before January 1, 2018, and $515 thereafter. See Nicholls Decl. ¶ 12 and Ex. C.

found rates of $125–$300 per hour reasonable for associates . . . ."). An hourly associate rate of $275 is appropriate given the associates' experience and the complexity of this case.

The plaintiffs are therefore entitled to $17,428.75 in reasonable attorney's fees and costs.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the reasons explained above, the plaintiffs' motion for summary judgment is **granted** and the defendants' motion for summary judgment is **denied.**

The Clerk of Court is directed to enter judgment in favor of the plaintiffs and against the defendants in the following amounts: (1) $72,702 in withdrawal liability; (2) prejudgment interest in the amount of $25,732.67 plus the interest that has accrued at a rate of $35.54 per day from March 26, 2018, until the date that judgment is entered in this case; (3) liquidated damages in the amount of $25,732.67 plus the interest that has accrued at a rate of $35.54 per day from March 26, 2018, until the date that judgment is entered; and (4) attorney's fees and costs in the amount of $17,428.75.

Once judgment is entered, the plaintiffs are entitled to postjudgment interest pursuant to 28 U.S.C. § 1961.

The Clerk is also ordered to close this case and to close all pending motions.

**SO ORDERED.**

Dated:   **New York, New York**
         **November 30, 2018**

_____
John G. Koeltl
United States District Judge